Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law
A Law Corporation

MARK M. MURAKAMI          7342-0
mmm@hawaiilawyer.com
E. KUMAU PINEDA-AKIONA    9790-0
ekp@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, Hawaii  96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

Attorneys for Plaintiff
 NIPPO TOURIST INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NIPPO TOURIST INC., | ) | CIVIL NO. CV13-00332 LEK-KSC |
| | ) | **(Other Contract)** |
| Plaintiff, | ) | |
| | ) | **FINDINGS AND** |
| vs. | ) | **RECOMMENDATION TO** |
| | ) | **GRANT DEFAULT JUDGMENT** |
| CAMILLE L. PANOKE; | ) | **AGAINST DEFENDANT** |
| DOE DEFENDANTS 1-20, | ) | **CAMILLE L. PANOKE** |
| | ) | |
| Defendants. | ) | **Hearing:** |
| | ) | Date:  June 10, 2014 |
| | ) | Time:  2:00 p.m. |
| | ) | Judge:  Hon. Kevin S.C. Chang |
| | ) | |
| _____ | ) | |

## FINDINGS AND RECOMMENDATION TO GRANT DEFAULT JUDGMENT AGAINST DEFENDANT CAMILLE L. PANOKE

Plaintiff NIPPO TOURIST INC.'s Motion for Default Judgment Against Defendant CAMILLE L. PANOKE ("Motion") was heard before the Honorable Kevin S.C. Chang on June 10, 2014. E. Kumau Pineda-Akiona appeared for Nippo Tourist Inc. ("Nippo"). Camille L. Panoke ("Defendant") did not appear, nor did she file an Opposition to the Motion.

IT IS FOUND AND RECOMMENDED that Nippo shall have judgment against Defendant for the following reasons:

## I.   INTRODUCTION

1.   Nippo is and was at all times relevant herein a Japanese corporation, with its principal place of business in Tokyo, Japan.

2.   Defendant is and was at all times relevant herein a citizen and resident of the State of Hawaii.

3.   The Court has jurisdiction over the subject matter of the case and over the person of all parties herein. This is a diversity action arising pursuant to 28 U.S.C. § 1332 (2012) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

243442

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (2012) because the contract at issue was to be performed in this judicial district.

5. On July 3, 2013, Nippo filed a Complaint against Defendant.

6. Service was made on Defendant by publication pursuant to Haw. Rev. Stat. §§ 634-35, 634-36 (1993).

7. Defendant has never answered or otherwise appeared in this action.

8. Entry of Default in favor of Nippo against Defendant was entered by the Clerk on November 12, 2013 [*see* Doc. 12-2].

## II. FACTUAL BACKGROUND

9. Nippo has been organizing special tours to see the Merrie Monarch Festival in Hilo since 2008.

10. Nippo typically obtains between 120 and 150 admission tickets for the Festival per year.

11. Tour companies such as Nippo typically obtain the majority of their tickets through unofficial "ticket brokers."

12. Defendant is a hula instructor and ticket broker.

### A. Defendant Promised to Deliver Merrie Monarch Festival Tickets to Nippo

13. On May 1, 2012, Defendant informed Mr. Chikao Toriyama, a mutual acquaintance of the parties and agent of Nippo, that she had twenty-five

(25) general admission tickets for sale for the 2013 Festival at $100 per ticket. *See* Exhibit "A" to the Motion (correspondence between the parties).

14.    These tickets were to cover the three (3) nights of the 2013 Merrie Monarch Hula Competition, which took place in April 2013.

15.    Upon learning that Defendant had these tickets for sale, Nippo's manager of group sales, Mr. Isao Kobayashi, agreed to purchase the tickets for Nippo through Mr. Toriyama. *See id.* at 3.

16.    Thereafter, Mr. Toriyama wired $2,500 to Defendant in exchange for the 25 general admission tickets for Nippo, plus two (2) reserved seats for Mr. Toriyama. *Id.*

17.    On June 4, 2012, Nippo paid Mr. Toriyama $2,500 in exchange for the tickets. *See* Declaration of Isao Kobayashi, attached to the Motion; Exhibit "B" to the Motion (proof of payment to Mr. Toriyama).

18.    On July 1, 2012, Defendant represented to Nippo that she had additional Festival tickets for sale. *See* Exhibit "A" at 4.

19.    Thereafter, on July 3, 2012, Nippo agreed to purchase an additional fifteen (15) general admission tickets from Defendant. *Id.* at 5.

20.    On July 6, 2012, Mr. Kobayashi personally met with Defendant in Honolulu and paid her $1,800 plus a $200 tip in exchange for the additional 15 tickets. *Id.* at 5-6; Kobayashi Dec.

21.     At this point, Nippo had fully performed its obligations by paying Defendant a total of $4,500 in exchange for forty (40) general admission tickets and 2 reserved tickets.

22.     Defendant does not dispute that she received $4,500 in exchange for the forty-two (42) Festival tickets. *See* Declaration of Mark. M. Murakami, attached to the Motion.

23.     On December 30, 2012, Defendant communicated to Nippo that she should have the 42 "tickets in a week or so." Exhibit "A" at 7. In this message, Defendant further stated that Nippo "should get [its] tickets from me in a few weeks." *Id.* at 8.

24.     On January 26, 2013, Defendant messaged Mr. Kobayashi, indicating that she had mailed the tickets to him via registered mail. *Id.* at 9.

25.     Defendant, however, failed to confirm the proper mailing address with Nippo before she allegedly mailed the tickets. *See id.* at 11.

26.     On January 28, 2013, Defendant sent a message to Mr. Kobayashi offering to sell an additional five (5) tickets to Nippo for $150 per ticket. *Id.* at 9.

27.     On January 29, 2013, Mr. Kobayashi sent a message to Defendant agreeing to purchase the additional 5 tickets. *Id.*

243442

28.     On February 5, 2013, Defendant messaged Mr. Kobayashi to see if he received the tickets.  *Id.* at 10.

29.     Later that day, Defendant sent another message to Nippo stating that she sent the tickets to the address listed on Mr. Kobayashi's business card . . . . "Your office I think. . . . I hope that was the right address!"  *Id.* at 11.  Mere hours later, Mr. Kobayashi communicated to Defendant that the company name, Nippo Tourist Inc., was missing from the address.  *Id.*

30.     Because there are many businesses in Nippo's office building, Defendant's failure to include Nippo's company name constituted an incomplete address.  Kobayashi Dec.

31.     On February 10, 2013, Defendant represented that the U.S. Postal Service told her the tickets "were deleivered [sic] to your building so I still don't understand?  I am going to sell the other 5 tickets because *I need the money* I can not wait until March.  I am sorry."  Exhibit "A" at 13 (emphasis added).

32.     On February 12, 2013, Defendant represented that she had just came from the Honoka`a post office, which tracked the package to Tokyo and that "it was deleivered [sic] last week."  *Id.*

**B.** **Defendant Guaranteed she could Get Nippo's Guests Admitted into the Festival, even without the Promised Festival Tickets, but Failed to Perform**

33.　On February 14, 2013, Defendant sent a message to Mr. Kobayashi saying "not to worry if the tickets don't come back to me or you, I already talked to Merrie Monarch . . . . *I will just have to come with you and your people and they will allow me 40 people in* . . . . [the Festival Director] *is my very good friend*." *Id.* (emphases added).

34.　Also on February 14, 2013, Nippo confirmed that it could obtain "admission [to] Merrie Monarch with [Defendant]" to which Defendant responded, "your [sic] welcome!" Exhibit "A" at 13-14.

35.　On February 23, 2013, Defendant reaffirmed that if all else "fails I will meet at Merrie Monarch to let your 40 people in. I am really sorry about this." *Id.* at 14. Defendant also admitted that she "didn't put [Nippo's] company name that is where *I made the mistake*!" *Id.* (emphasis added).

36.　On March 24, 2013, while Defendant was in Japan, she messaged Nippo that the "American government is checking. We will find. [The Festival Director] said many tickets have gone missing! they are making claims. I will see you before I go dont [sic] worry. But do not work with Abe he is trouble! And trying to cause trouble for me!" *Id.* at 15.

37.     Based on Defendant's promises, Mr. Kobayashi responded to Defendant that he felt a little better, but because of the missing tickets, Nippo was already "talking about a description and compensation to customers. *I can not stop shivering*." *Id.* at 15 (emphasis added). Defendant acknowledged Mr. Kobayashi's concerns by responding, "I understand." *Id.*

38.     On March 27, 2013, Defendant sent a message to Nippo stating that she

> just heard from Hawaii and I think we might have the tickets back on Big Island . . . . I go home in a few days I will let you know. But dont [sic] worry I wont [sic] let you down! I love Tori san and would never do anything to get him upset with me. I also will see [the Festival Director] at MM again as soon as I arrive on Big Island! This year is so crazy I never had any problems before!!! *Stay calm it will all be good*!

*Id.* at 16 (emphasis added).

39.     Later that day, Defendant confirmed that she would call Mr. Kobayashi "as soon as I get home!!!!" *Id.*

40.     However, Defendant never called Mr. Kobayashi, despite her repeated assurances.

41.     Contrary to Defendant's promises, when Nippo and its guests arrived in Hilo for the Festival on April 2, 2013, Defendant could not be reached. *See id.*

8

42.     Nippo was extremely worried about the entire situation because the Hula Competition was set to begin on April 4, 2013, and its ticket source, Defendant, who had also promised to get its guests into the Festival, even without the prepaid tickets, was nowhere to be found.

43.     Nippo repeatedly attempted to contact Defendant via telephone, but Defendant could not be reached.  *Id.*

44.     On April 4, 2013, Mr. Kobayashi messaged Defendant and provided her with his local phone number.  *Id.*  Mr. Kobayashi further stated that he wanted the tickets, to please call him, and informed Defendant that he was staying at the Hilo Hawaiian Hotel.  *Id.*

45.     Later that day, Mr. Kobayashi sent another frantic message to Defendant stating that it was "not possible to contact you and I am very anxious. Please get in touch."  *Id.*

46.     Defendant, however, failed to get in touch with Mr. Kobayashi as promised.  Kobayashi Dec.

## C.      As a Direct Result of Defendant's Actions and Omissions, Nippo Has Suffered, and Will Continue to Suffer, Damages

47.     Due to Defendant's material breaches, Nippo was 40 tickets short for all three days of the Festival and was told these 40 guests could not be accommodated without tickets.  *Id.*

48.     As a result, Nippo was forced to spend approximately $10,335 to obtain Festival tickets from other sources.  *Id.*; *see* Exhibit "C" to the Motion (ticket expenditures spreadsheet).

49.     Nippo also had to rent a banquet room for $2,760.75 to broadcast the Festival for its remaining customers that were unable to enter the Festival due to the shortage in tickets caused by Defendant.  *Id.*; *see* Exhibit "D" to the Motion (invoice from Naniloa Volcanoes Resort).

50.     Nippo also had to spend approximately $500 to rent a screen to broadcast the Festival in the banquet room, and $450 in drinks and $1,500 in bentos to accommodate its guests during this time.

51.     Because Defendant did not deliver the tickets or get Nippo's guests into the festival through the Festival Director as promised, Nippo's customers were outraged and Nippo was compelled to refund the majority of its customers roughly 50,000 Yen each, a total of 7,320,000 Yen, equivalent to approximately $74,147.  *Id.*; *see* Exhibit "E" to the Motion (refund spreadsheet).

52.     Nippo has not been reimbursed the $4,500 it paid to Defendant for the tickets she failed to deliver.  Kobayashi Dec.

53.     Defendant breached the terms of her agreements with Nippo for failing to deliver the prepaid tickets and failing to get Nippo's guests into the Festival as promised, all the while retaining Nippo's payments.

54. In all, Nippo has suffered $94,192.75 in out-of-pocket damages.

55. Further, Defendant's actions and omissions have permanently damaged the goodwill and reputation of Nippo, which has already resulted in, and will continue to result in significant lost income. *Id.*

56. Nippo's counsel sent Defendant a demand letter outlining Nippo's damages, but Defendant has not since responded, nor has she disputed the amounts owed. *See* Murakami Dec.; Exhibit "F" to the Motion (May 31, 2013 demand letter from Damon Key to Defendant).

**D. Nippo Has Incurred, and Continues to Incur, Attorneys' Fees and Costs in Seeking to Recover Monies Owed by Defendant**

57. As of January 16, 2014, Nippo incurred $10,467.00 in attorneys' fees and $493.21 in general excise tax ("GET") on its attorneys' fees; and to date, $1,150.65 in costs in connection with the instant action. *See* Murakami Dec.; *see also* Exhibit "G" to the Motion (2014 Book of Lists published by the Pacific Business News, listing numerous Hawaii law firms and their respective billing rates); Exhibits "H" to the Motion (Damon Key invoices); Exhibit "I" to the Motion (Bill of Costs).

58. Nippo's counsel explained to Defendant in its demand letter that if she refused to settle, Nippo would file suit to recover its damages, plus attorneys' fees and costs. Exhibit "F."

11

59. Defendant, however, did not respond, so Nippo filed suit on July 3, 2013.

60. Because Nippo was unable to serve Defendant personally, or via certified mail pursuant to Haw. Rev. Stat. § 634-36, Nippo had to resort to serving Defendant by Publication [*see* Docs. 6, 7, 10]. *See* Murakami Dec. These efforts to serve Defendant significantly increased Nippo's legal expenses. *Id.*

## III. LEGAL STANDARD

### A. Motion for Default Judgment

61. After a plaintiff secures entry of default, the plaintiff may "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

62. Under the general rule, "upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Kauai Coffee Company, Inc. v. Global Horizons, Inc.*, No. 10-00500 JMS-KSC, 2011 U.S. Dist. LEXIS 17845, at *9 (D. Haw. Jan. 26, 2011) (quoting *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

63. A Court may enter default judgment at its discretion. *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980).

64. In determining how to exercise that discretion, courts may consider the following factors:

> (1) the substantive merits of the plaintiff's claim; (2) the sufficiency of the complaint; (3) the amount of money at

stake; (4) the possibility of prejudice to plaintiff if relief is denied; (5) whether default was the result of excusable neglect; and (6) the strong policy of the Federal Rules that favors decisions on the merits.

*Kauai Coffee*, 2011 U.S. Dist. LEXIS 17845 at *9 (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

65.     Under "this discretionary standard, default judgments are more often granted than denied." *Id.*

**B.     Attorneys' Fees**

66.     Under Hawaii law, the prevailing party is entitled to recover attorneys' fees in actions founded in contract:

> In all the courts, *in all actions in the nature of assumpsit* and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, *there shall be taxed as attorneys' fees, to be paid by the losing party* and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment. . . . The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

Haw. Rev. Stat. § 607-14 (Supp. 2013) (emphases added).

67.     Further, GET incurred on attorneys' fees constitutes a recoverable component of those fees. *See, e.g., Parr v. Kalani Corp.*, No. 11-

13

00514 ACK-BMK, 2012 U.S. Dist. LEXIS 56947, at *10 (D. Haw. Apr. 3, 2012) (awarding GET).

68.    Reasonable attorneys' fees are generally based on the traditional "lodestar" calculation, which entails multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

69.    Courts must then decide whether to adjust the lodestar amount after evaluating certain factors as outlined in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). *See Parr*, 2012 U.S. Dist. LEXIS 56947 at *6-7.

**C.    Costs**

70.    Costs are recoverable under Fed. R. Civ. P. 54(d)(1), which states, in relevant part:  "Unless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." *Id.*  The recovery of costs is also provided by statute:

> All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be in allowed in taxation of costs.

Haw. Rev. Stat. § 607-9 (Supp. 2013).

### D.  Postjudgment Interest

71.  Once a judgment is entered in a claimant's favor, postjudgment interest shall accrue on the judgment "at the rate of ten per cent a year[.]"  Haw. Rev. Stat. § 478-3 (2008).

## IV.  DISCUSSION

### A.  Default Judgment is Appropriate

72.  Taken as a whole, "liability has been established by [Defendant's] failure to defend or otherwise answer the Complaint in this action, and as all of the discretionary factors articulated by the Ninth Circuit support default judgment, default judgment should be granted . . . ."  *Kauai Coffee*, 2011 U.S. Dist. LEXIS 17845 at *15.

#### 1.  Nippo Prevails on the Substantive Merits and Sufficiency of the Complaint

73.  The first two factors of the default judgment test, the merits of the substantive claims and the sufficiency of the Complaint, only require the plaintiff to state a claim upon which it may recover.  *Kauai Coffee*, 2011 U.S. Dist. LEXIS 17845 at *10 (citing *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)).

243442

### a.  Counts I and II – Breach of Contract

74.  It is a black-letter principle of contract law that "the promisor ordinarily is bound to perform his [or her] agreement according to its terms or, if he [or she] unjustifiably fails to perform, to respond in damages for his [or her] breach of the contract."  *Warner v. Denis*, 84 Haw. 338, 347, 933 P.2d 1372, 1381 (App. 1997) (punctuation and citation omitted).

75.  To prevail on a breach of contract claim, a plaintiff must establish only (1) that a contract exists, and (2) that the defendant failed to perform as required by the contract.  *See Wyndham Vacation Resorts, Inc. v. Architects Haw. Ltd.*, 703 F. Supp. 2d 1051, 1062 (D. Haw. 2010).

76.  Here, it is undisputed that Defendant is liable to Nippo for breach of contract.

77.  First, Defendant promised in writing to Messrs. Toriyama and Kobayashi on multiple occasions that she would deliver 42 Festival tickets to Nippo in exchange for $4,500 in valuable consideration.  *See* Exhibit "A." Defendant expressly breached of the terms of her agreement with Nippo by failing to deliver the prepaid Festival tickets to Nippo as agreed, despite being paid $4,500.

78.  And second, after Defendant admitted that she sent the tickets to an incomplete address, Defendant expressly promised in writing that she would

personally get Nippo's customers into the Festival, as she had "already talked to Merrie Monarch" and was a "very good friend" of the Festival Director. *Id.* Thus, Defendant also breached the terms of her subsequent agreement with Nippo by entirely disregarding her promise to personally meet Nippo and its customers at the Festival to allow them entry.

79.     As previously discussed, as a direct result of Defendant's material breaches, Nippo has suffered $94,192.75 in out-of-pocket damages.

### b.     Count III – Promissory Estoppel

80.     Under Hawaii law, a plaintiff must establish the four following factors to state a claim for promissory estoppel:

(1) There must be a promise;

(2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability);

(3) The promisee does in fact rely upon the promisor's promise; and

(4) Enforcement of the promise is necessary to avoid injustice.

*White v. Pac. Media Grp., Inc.*, 322 F. Supp. 2d 1101, 1109 (D. Haw. 2004) (quoting *In re Herrick*, 82 Haw. 329, 337-38, 922 P.2d 942, 950-51 (1996)).

81.     In this case:  (1) Defendant promised that she would deliver 42 Festival tickets to Nippo and that if the tickets were not received on time,

Defendant would personally get Nippo's guests into the Festival; (2) It was foreseeable that Nippo would rely on Defendant's promises because Festival tickets are very difficult to acquire in large numbers and Defendant represented that she was a very good friend of the Festival Director; (3) Nippo in fact relied on Defendant's promises by providing payment in full for the tickets and flying to Hilo from Japan with its ticketless guests because of Defendant's promises that she would get Nippo's guests into the Festival even without tickets due to her alleged close relationship with the Festival Director; and (4) enforcement of Defendant's promises is necessary to avoid the injustice that has occurred, namely $94,192.75 in out-of-pocket damages. *See Matsumura v. Bank of Am., N.A.*, No. 11-00608 JMS-BMK, 2012 U.S. Dist. LEXIS 16702, at *14-16 (D. Haw. Feb. 10, 2012).

### c.     Count IV – Unjust Enrichment

82.     Nippo conferred benefits on Defendant, i.e., $4,500 for the purchase of the 42 Festival tickets.

83.     Defendant has retained these advanced funds, in contradiction to her representations, promises, and the law.

84.     Because of Defendant's failure to fulfill her contractual obligations, it would be unreasonable and unjust to allow Defendant to retain the monies paid to her by Nippo. *See Lakatani v. Waypoint Law Group*, No. 11-00203 LEK-RLP, 2012 U.S. Dist. LEXIS 106433, at *4 (D. Haw. July 13, 2012) (finding

18

that plaintiffs "established damages for unjust enrichment in the amount of $28,091.27").

**2.    Amount at Stake is Appropriate**

85.    As to the third factor, courts "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.

86.    Nippo sought damages of $94,192.75 in out-of-pocket costs; and an award for attorneys' fees and costs of $13,110.86, which includes an estimated $1,000 associated with finalizing the Motion and obtaining a final written judgment.

87.    In all, Nippo sought a judgment of $107,303.61, exclusive of postjudgment interest.

88.    Nippo's "damages request is tailored to Defendant's specific wrongful conduct in failing to abide by the terms of the . . . agreements." *Trs. of the PAMCAH-UA Local 675 Trust Funds v. Ekahi Fire Prot., LLC*, No. 13-00100 HG-RLP, 2013 U.S. Dist. LEXIS 83384, at *8 (D. Haw. May 21, 2013).

89.    Accordingly, "this factor weighs in favor default judgment." *Id.* (awarding $428,817.68 for damages, attorneys' fees, and costs).

**3.    Prejudice to Nippo if Default is not Granted**

90. "The fourth factor, the possibility of prejudice to Plaintiff, also weighs in favor of granting default judgment." *Kauai Coffee*, 2011 U.S. Dist. LEXIS 17845 at *13.

91. In this case, "absent entry of default judgment, Plaintiffs would not have another recourse for recovery." *Ekahi Fire Prot., LLC*, 2013 U.S. Dist. LEXIS 83384 at *6; *see PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

92. Therefore, "there is clear prejudice to Plaintiffs." *Kauai Coffee*, 2011 U.S. Dist. LEXIS 17845 at *13.

### 4. There is no Excusable Neglect

93. As to the fifth factor, there is no possibility of excusable neglect.

94. "Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered." *Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

95. Here, Defendant was served with the Complaint. Defendant was also served with the Entry of Default [*see* Doc. 12-3] and the Motion, even

though Nippo was not required to serve the Motion because of Defendant's failure to enter an appearance in this action. *See Kauai Coffee*, 2011 U.S. Dist. LEXIS 17845 at \*8.

96.     "Given the ample notice that [Defendant] has received regarding this action, there is no possibility of excusable neglect. [Defendant's] disregard for this lawsuit is inexcusable, and this factor favors granting default judgment." *Id.* at \*14; *see United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004) (upholding default judgment where plaintiff provided notice of motion for default judgment and claimant failed to answer or otherwise oppose the motion).

### 5.     Policy for Deciding on the Merits does not Preclude Default Judgment

97.     As to the sixth and final factor, despite the general principle that cases should be decided on their merits when reasonably possible, this preference "does not preclude a court from granting default judgment." *Kauai Coffee*, 2011 U.S. Dist. LEXIS 17845 at \*15.

98.     Because Defendant's "failure to answer [the] Complaint makes a decision on the merits impractical, if not impossible," this factor weighs in favor of default judgment. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see Phillip Morris USA, Inc.*, 219 F.R.D. at 501 (holding that the policy of deciding on the merits did

not preclude default judgment where defendant failed to defend or otherwise answer).

**B.      Nippo is Entitled to Recover its Attorneys' Fees and Costs Expended in this Action, and Postjudgment Interest**

99.     As the prevailing party in this case, Nippo is entitled to recover its attorneys' fees and costs. *See* Haw. Rev. Stat. §§ 607-14, 607-9; Fed. R. Civ. P. 54(d).

100.    The $10,467.00 fee request includes amounts incurred in connection with preparing the Motion and supporting materials. *See* Exhibit "H"; *see Ekahi Fire Prot., LLC*, 2013 U.S. Dist. LEXIS 83384 at *13-15 (finding that plaintiffs were entitled to the requested $8,345.55 in attorneys' fees and GET incurred to obtain default judgment).

101.    Nippo is also entitled to GET on its attorneys' fees at the effective rate of 4.712%. *See id.*; *Parr*, 2012 U.S. Dist. LEXIS 56947 at *10 (awarding GET).

102.    Under Haw. Rev. Stat. § 607-14, an award of attorneys' fees may also include "the amount of time the attorney is likely to spend to obtain a final written judgment." *Id.*

103.    Nippo requested an award of $1,000 in attorneys' fees in connection with finalizing its Motion and obtaining a final written judgment. *See* Murakami Dec.; *Parr*, 2012 U.S. Dist. LEXIS 56947 at *10 (*sua sponte* awarding

22

additional attorneys' time for drafting post-hearing proposed findings and recommendation).

104. In all, Nippo requested an award of $11,960.21 under Haw. Rev. Stat. § 607-14.

105. Based on the requested damages of $94,192.75, Nippo's requested attorneys' fees are well below the 25% statutory cap under section 607-14.

106. Of the requested amount, $11,077.80 constitutes a reasonable fee to be awarded to Nippo as the prevailing party under section 607-14.

107. Under Haw. Rev. Stat. § 607-9 and Fed. R. Civ. P. 54(d)(1), Nippo is also entitled to recover its costs incurred in connection with this matter.

108. As noted above, Nippo incurred costs amounting to $1,150.65.

109. Of this amount, Nippo is entitled to an award of $1,142.10 for necessary filing fees, photocopying expenses, and shipping fees. *See* Murakami Dec.; Exhibit "I."

110. Nippo is also entitled to postjudgment interest on its award at 10% per annum until the judgment is satisfied. *See* Haw. Rev. Stat. § 478-3.

## V. CONCLUSION

111. There is no just reason for delaying entry of default judgment against Defendant.

THEREFORE, IT IS FOUND AND RECOMMENDED that Judgment shall be entered against Defendant and in favor of Nippo as follows:

|  | **DAMAGES** | $94,192.75 |
| + | **ATTORNEYS' FEES** | $11,077.80 |
| + | **COSTS** | $ 1,142.10 |
|  | **TOTAL** | **$106,412.65** |

Postjudgment interest shall accrue on the unpaid, principal judgment amount at 10% per annum until the judgment is satisfied, currently equivalent to $29.15 per day.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, August 21, 2014.



_____
Kevin S.C. Chang
United States Magistrate Judge

*Nippo Tourist Inc. v. Camille L. Panoke, et al.*, Civil No. 13-00332 LEK-KSC; FINDINGS AND RECOMMENDATION TO GRANT DEFAULT JUDGMENT AGAINST DEFENDANT CAMILLE L. PANOKE

24

243442